UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
MICHAEL DION LOCKWOOD, :
:
                               Plaintiff, :        13 Civ. 8104 (ALC)
:
        -against- :
:
                                                 : **MEMORANDUM AND**
:        **OPINION**
FEDERAL BUREAU OF PRISONS, et al., :
:
                             Defendants. :
-------------------------------------------------------------- :
                                                    X

ANDREW L. CARTER, JR., District Judge:

On November 8, 2013, Plaintiff Michael Dion Lockwood ("Lockwood"), *pro se*, commenced this action against the Federal Bureau of Prisons ("BOP"), Howard L. Hufford[1] ("Hufford"), and Diane Sommer, M.D. ("Sommer") (collectively, "Defendants") under 42 U.S.C. § 1983[2] in connection with alleged events that occurred while Lockwood was an inmate at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"). Specifically, Lockwood claims constitutional injuries arising from Defendants' failure to timely remove the screws that had been surgically inserted into his hand to heal it, pain and suffering resulting therefrom, pain and suffering resulting from Defendants' failure to give him free pain medication, and a permanent bone disfigurement in his hand. On November 14, 2014, Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). After two *sua*

---

[1] The Complaint spells Defendant Hufford's name "Hofford," but this Opinion adopts the Defendant's spelling of his own name via the Motion to Dismiss filed on his behalf.
[2] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C.A. § 1983.

1

COPIES MAILED

*sponte*, *nunc pro tunc* extensions of the deadline for Lockwood to file an Opposition to Defendants' Motion to Dismiss,[3] the matter became fully briefed on February 9, 2015.[4]

For the reasons elaborated in this Opinion, the Motion to Dismiss is GRANTED under Fed. R. Civ. P. 12(b)(1) because, even liberally construing Lockwood's allegations to state cognizable claims, the Complaint is defeated by Lockwood's failure to exhaust the administrative remedies available to him. Accordingly, there is no need to address Defendants' alternative grounds for dismissal.

## BACKGROUND

The following allegations are assumed true only for purposes of the Motion to Dismiss. At approximately 9:45 p.m. on December 13, 2011, while detained on a federal charge in Cambria County Prison in Pennsylvania, Lockwood slipped and fell in his cell, breaking his hand in two places. Compl. 2-3, ECF No. 2. Six days passed before a doctor treated him. *Id.* 3. Screws were placed in his hand and were not removed until 11 months later at a federal facility.[5] *Id.* The delayed removal of the screws necessitated additional surgery and caused serious pain and suffering—as well as a permanent bone disfigurement in his hand—that lasted throughout his time in the federal prison at FCI Otisville (to which he transferred after his initial surgery), at least until the time of the filing of the Complaint. *Id.* Also at the time of the filing of the Complaint, other than having once given him a week's worth of Motrin a year earlier, FCI

---

[3] The first deadline for Lockwood to file an Opposition was December 19, 2014. After receiving nothing, on January 14, 2015, the Court issued an order extending the deadline to January 27, 2015. Again, Lockwood did not file an Opposition. On February 9, 2015, the Court received a one-page Opposition. On February 10, 2015, again *nunc pro tunc* and again without being asked by Lockwood to do so or being given an explanation as to why he missed the prior two filing deadlines, the Court extended the time for Lockwood to file his Opposition to February 10, 2015.
[4] On February 13, 2015, Defendants filed a letter with the Court waiving their opportunity to file a Reply to the Opposition that had been submitted and resting on the arguments made in their Motion to Dismiss.
[5] Presumably, when Lockwood writes that "it took 11 months for the feds to take them out," he is referring to the medical staff at FCI Otisville. The Complaint does not state when Lockwood transferred to FCI Otisville.

2

Otisville refused to provide him free pain medication. *Id.* Instead, the prison's medical staff insisted that he pay for the pain medication, despite the doctor who performed his surgery having written in Lockwood's file that he was to receive Motrin. *Id.* At the time of the commencement of this action, Lockwood's pain and suffering was so severe that he "suffer[ed] pain from the slightest of task[s]." *Id.* At the time of the filing of the Complaint, Hufford was the warden of FCI Otisville and Sommer was the facility's clinical director. *Id.* 2.

Lockwood raised each of these issues at FCI Otisville through the facility's grievance process. *Id.* 4. However, he ceased his efforts to utilize the administrative regime when he did not receive a response to any of his BP-8s.[6] *Id.* The BOP explains that a BP-8 is an "informal Inmate Request to Staff."[7]

## STANDARD OF REVIEW

To withstand a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "need not include detailed factual allegations, but must contain sufficient factual matter ... to state a claim to relief that is plausible on its face." *Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 71 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). Incantation of the elements of a cause of action, "supported by mere conclusory statements," is not enough to show plausibility. *Id.* at 72.

---

[6] Defendants offer evidence directly refuting Lockwood's claim that he never received a response. Scannell Decl. Ex. D, ECF No. 21. Although the Court is permitted to consider this evidence when deciding a motion under Fed. R. Civ. P. 12(b)(1), *United States v. Vazquez*, 145 F.3d 74, 80 (2d Cir. 1998), and because it is incorporated in the Complaint by reference, *Falso v. Ablest Staffing Servs.*, 328 F. App'x 54 (2d Cir. 2009), there is no need. As explained in the "Discussion" section of this Opinion, even accepting as true Lockwood's allegation that he never received a response to the BP-8s he submitted, the fact remains that he has failed to exhaust his administrative remedies.

[7] Scannell Decl. ¶ 16.

Nevertheless, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (internal quotation marks omitted). In particular, "the pleadings of a *pro se* plaintiff ... should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).

## DISCUSSION

As an initial matter, Defendants may not be found liable under 42 U.S.C. § 1983. The reach of that statute is expressly limited to individuals, specifically those persons acting under color of state law. *Supra* note 2. The BOP is a creature of the federal government, and the Complaint alleges that Hufford and Sommer committed tortious acts in their capacities as BOP employees. *See Kingsley v. BOP*, 937 F.2d 26, 30 n.4 (2d Cir. 1991) ("An action brought pursuant to 42 U.S.C. 1983 cannot lie against federal officers."). Nevertheless, in interpreting the *pro se* Complaint to raise the best possible claims, the Court construes this action as a suit against the BOP under the Federal Tort Claims Act ("FTCA"),[8] 28 U.S.C. §§ 1346(b), 2401(b), 2671-80, and against Hufford and Sommer in their individual capacities[9] under *Bivens v. Six Unknown Fed. Narcotics Agents*,[10] 403 U.S. 388 (1971).

---

[8] The FTCA effects "a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012). The United States has not waived its sovereign immunity concerning constitutional claims seeking damages. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *Owusu v. BOP*, No. 02 Civ. 0915, 2003 WL 68031, at *1 (S.D.N.Y. Jan. 7, 2003).

[9] "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson*, 21 F.3d at 510.

[10] "In a *Bivens* action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action." *Id.* For the avoidance of doubt, Lockwood's claimed injuries of "[severe] pain and discomfort for well over a year with [b]asically little or no medical [a]ttention," additional surgery caused by Defendants' failure to remove screws from his hand, a permanent

4

Lockwood's claim against the BOP under the FTCA fails because under that statute, a plaintiff "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). With respect to claims against the BOP, the FTCA requires that an inmate mail or deliver his or her claim to the BOP's Regional Office, and then to appeal an adverse decision in writing to the BOP prior to filing suit in U.S. District Court. 28 C.F.R. §§ 543.31(c), 543.32(g). Because Lockwood nowhere indicates that he submitted a claim under the FTCA to the Regional Office, he has not exhausted his administrative remedies and the Court lacks subject matter jurisdiction to adjudicate his claim.[11] *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) ("The burden is on the plaintiff to both plead and prove compliance with the statutory requirements."); *Adams by Adams v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 318, 321 (2d Cir. 1986) (the requirements stated in 28 U.S.C. § 2675 are "jurisdictional and cannot be waived").

The administrative grievance regime for *Bivens* claims is, by contrast, a four-tiered procedure that Lockwood has similarly failed to exhaust prior to filing this action. As the Second Circuit described in another case:

> The first step required inmates to "present an issue of concern informally" to the prison staff so that they could attempt to resolve it. *See* 28 C.F.R. § 542.13(a). If the issue remained unresolved, the inmate could submit "a formal written Administrative Remedy Request" to the institution staff member designated to receive such requests. *See id.* § 542.14. The inmate could appeal any adverse decision made at that stage to the Regional Director, and then to the BOP's General Counsel. *See id.* § 542.15(a).

---

bone disfigurement in his hand, and pain from performance of the slightest of tasks are most fairly read as arising under the Eighth Amendment to the U.S. Constitution, which bars "cruel and unusual punishment." *See Carlson v. Green*, 446 U.S. 14, 17-18 (1980) (noting that the district court and Seventh Circuit found deceased inmate's estate to have a cause of action under the Eighth Amendment for inadequate medical care); *Owusu v. BOP*, 2003 WL 68031, at *1.

[11] The BOP confirms that no such filing was made. Scannell Decl. ¶ 19.

*Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (citations in original). Lockwood's repeated submission of BP-8 forms, without more, means that he has not gone further than the first step of informally presenting his grievances to BOP staff. Even if the Court were to accept Lockwood's contention that he never received a response to those filings, that would not be enough to obviate the need to comply with the three remaining prerequisites. The failure of the BOP to address a BP-8 is a failure to resolve the issues raised therein, and an inmate must then submit a BP-9, or "Administrative Remedy Request," to the warden. *See* 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."). Therefore, Lockwood's admission that he abandoned the administrative grievance process because he never received a response to his BP-8s is fatal to his claims under *Bivens*. *Johnson*, 569 F.3d at 45 (upholding dismissal for failure to exhaust); *De La Motte v. Menifee*, 40 F. App'x 639, 639-40 (2d Cir. 2002) (same).

     Moreover, in reviewing the Complaint and the briefs submitted, the Court finds no justification for excusing Lockwood's non-exhaustion. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (indicating the appropriateness of excusal where (1) administrative remedies were unavailable to the plaintiff, (2) defendants either are estopped from raising, or have forfeited, non-exhaustion as a defense, or (3) "special circumstances have been plausibly alleged") (internal quotation marks omitted). Lockwood admits that he had access to administrative process, and in any event the evidence is that he did. Moreover, there is no reason to conclude that estoppel, forfeiture, or special circumstances apply here. Lockwood's speculation that "the prison must be shre[d]ding my BP8s" because he "never get[s] [a]ny [r]esponses [b]ack," and that such behavior is in furtherance of running out the applicable statute

6

of limitations, Compl. 4, even if true, does not plausibly justify his non-compliance in light of the procedure available to prisoners who do not receive responses to their grievances. It is also implausible based on the evidence submitted by Defendants that they have been keeping records of, and responding to, his informal requests. *See supra* note 6.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss is GRANTED under Fed. R. Civ. P. 12(b)(1). The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Dated:**   July 21, 2015
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**